good morning and may it please the court Tyler Talbert on behalf of the plaintiff appellant miss Karen Ledford we reserved five minutes for a bottle this case is about abuse of the corporate form the Kossi Roping Club's directors admitted that they ran a dangerous event they shifted that risk to the public by maintaining a corporation that was consistently and intentionally undercapitalized on that factual backdrop we make three submissions to the court here today first is that there's a fact issue on Vail Pearson second is that equitable tolling is proper in this case and third finally as if doubts remain on these legal issues certification the Supreme Court of Texas is the appropriate result so let's turn now to the first of these but there's a fact issue that the organization was a sham to perpetrate a fraud I want to take this up in kind of two big chunks first legally and factually the evidence does create a fact issue on that point and then second let's tackle this notion that somehow nonprofits are categorically immune from Vail Pearson as to the first of these the Supreme Court of Texas has told us very clearly that Vail Pearson is appropriate whenever the organization is used to achieve an inequitable or an unjust result that's the standard they told us in Castleberry in 1986 it doesn't require actual fraud I think an absolute roadmap to this guidance is the PJC Texas pattern jury charge chapter 108 and 108.4 presents this simple question to a jury does use of the because here I mean the basis that you are arguing that fraud exists is centered around under capitalization that's absolutely true and generally the law is that under capitalization in and of itself is not a basis to set aside the in addition to under capitalization that you are asking us to consider that will support your claim of fraud. Sure and I agree absolutely that under capitalization standing alone isn't a basis to pierce the veil because look organizations may run their bank account a little thin they just may have had a hard couple of years and that's perfectly fine what the standard is is consistent gross intentional capitalization and let's talk about why that makes sense and then what evidence there is still under capitalization well and to the extent we say categorically under capitalization even if it's intentional consistent and calculated that that standing alone cannot be a basis to pierce the veil I would push back on that the court in Castleberry told us that it's a viable veil piercing and the court didn't just create that if we remember two years earlier the Supreme Court of Texas in Lucas v. Texas Industries explained to us why under capitalization is a good theory it said when you run a risky business but you are under capitalized you are shifting that risk to innocent members of the public and so I want that apply in all under capitalization situations well and what admittedly the authority on this is a little scant and what we see the secondary sources saying is is that it's an inadequate level of assets considering the activity that you've run and so look if you're still on the capitalization sure what is the additional evidence of fraud that you have other than under capitalization or its consequences and so the burden for the plaintiff in a tort claim is to put forward evidence of constructive fraud and let's talk about what the Supreme Court of Texas told us that is it is an actual fraud it is not intended a fraud it is that it has a I mean I ask you what is the evidence not the theory what is the evidence that you have beyond under capitalization so the evidence here is that Joe Suttle the president of the Cossie Roping Club he testifies look we brought in probably gross ten to twenty thousand dollars a year at the end of each year we netted about eight thousand dollars at the end of every single year we swept the account we spent it on one thing or another or we gave it away and so on that basis it is and and I'm I guess what I would suggest is under capitalization is a viable basis to pierce the theory well but I thought you so told Judge Jolly that you agreed that under capitalization in and of itself is not enough to pierce the bail. correct intentional gross consistent under capitalization is a viable theory to pierce it to pierce the bail it does not require any additional showing it does not require actual fraud that's Castleberry v. Branscombe and in Castleberry was the was the corporation giving the money to charity no it was a contract case yeah that's the thing it seems difficult is that it's a town of 500 people the reason they're sweeping the accounts at the end of the year is to give the money way to support the community and I'm having a hard time tying connecting the dots between that and an intentional what is the standard intentional effort to empty bank accounts to prevent recovery for potential tort claimants let me take that up in a couple pieces here first is it does not have to be intentional to prevent recovery remember if we fell under the t-box statute 21.223 we would have to show actual fraud we just have to show constructive fraud that they swept the accounts and the net result was something that violated public interest and so that's the standard but then let's talk address your concern how we're not seeing how we get there I would assuage that concern the first is that the Texas legislature has noted that nonprofits are specific specifically or sorry especially situated they provided them a specific immunity in chapter 84 if you're a nonprofit if you're a costly roping club get insurance your volunteers will have complete immunity they didn't do that they didn't keep insurance and they didn't keep their bank accounts and the second thing I would note that's kind of persuasion that concern will aren't nonprofits somehow different is it remember the question that's gonna go to a jury would it be inequitable for this result to stand and so what's your voicing is exactly the arguments that I suspect we will hear if we were to get to a trial that look we gave it away to charity although there's no evidence corroborating that other than the deposition testimony is there evidence to suggest that's not true well we asked him it we asked mr. subtle what happened in the money he says well we spend or we gave it away and we said do you have evidence of that and he said wow no I don't know nothing nothing else it's in the bank records and so it's a little a little thin on that point but to address your concern that well look is this really going to get us there what I would submit is on this record where you're operating an admittedly dangerous event and you're sweeping the accounts at the end of the year that that is injurious to public interest and that does at the very least we're arguing your honors create a fact issue as to injustice and inequity and I want to note this just really quickly is Supreme Court of Texas told us that in all but the most exceptional of cases this is a fact question for a jury again they told us that in Castleberry they reiterated that in Phillips in 2015 and so that's the appropriate result here I will take up very briefly this this notion that somehow nonprofits are categorically gonna ask you about something different actually because I mean certainly in my view if we have to get into the issue you want to talk about we should certify to the Texas Supreme Court but that's that's just my view what about the amended to add the individuals tell me why then the claims against the individuals are not subject to the statute of limitations absolutely and so what the Supreme Court told us told in Gentry in 1975 and in Matthews is that an action to pierce the veil is a viable remedy even after limitations have run on the underlying tort and let's look at the language of Gentry remember what Gentry told us it said it stops the running of limitations those are both alter ego cases so Gentry is you sue an organization and in fact it is the alter ego of another organization Matthews was it too was an alter ego case is there a distinction then with this case and let me take that I'm gonna have three parts to that answer this is a sham to perpetrate a fraud case it is not an alter ego but they are the same for two reasons first is here's what Gentry told us it said we're not going to thwart these equitable considerations by adherence to any particular theory of liability that's what we'd be doing we'd be saying well alter ego claimants get the benefit of tolling but sham to perpetrate a fraud claimants do not it kind of flips that concern on its head second what the Matthews court tells us is the exact same concerns that compel us to apply equitable tolling are the exact same concerns that apply to bail piercing generally it didn't say just to alter ego cases it said to bail piercing generally how so well because it's achieved because it's all aimed at achieving an equitable result and preventing the entity from being used as a cloak isn't it true or you tell me if it's true or not that to the plaintiffs was available information with respect to under capitalization well before the why shouldn't that way against applying equitable tolling to allow them to be sued outside the statute sure and let me let me take that up in two parts legally and factually legally is what the Supreme Court told us is it's kind of a mechanical rule it stops the running when you name the entity we've stopped running but factually I would push back that we had information well within limitations remember the event occurs in June of 2017 it's not until August of 19 August 27th of 19 that we learned for the very first time there's been consistent under capitalization I understand that your theory about cap under capitalization but didn't have information about the capitalization of the company long before that we did what we had was in December we had information suggesting that they were that they did not have insurance it was also rife with errors it said they were an unincorporated association that said people involved even in April of 19 got an affidavit that said we only have $8,000 in our bank account money that was not produced in discovery they voluntarily handed that over I'd submit to the court if they thought well this is gonna put us on the hook this is good enough to trigger a claim it wouldn't just have handed it over that not until August 27th of 19 did we actually have that consistent under time so that's your factual point your legal point is you're saying that there is a right line rule in the Texas law it says if you have a veil piercing claim in whatever theory you sue the corporation that stops the clock that's precisely what Gentry says I would head Gentry says I would hesitate to call it a bright line rule and I know this well I apologize I retract those words that's not the problem here is we're dealing with equities we're dealing with a lot of things that require equitable considerations remember the jury charge would it result in an equitable question and I get look we like bright line rules we don't like this kind of more factored test when a diversity case I like to know what Texas law is well and I do I'm happy to address the certification issue on that point but as the equitable tolling yes Gentry and Matthews both address this and here's what goes awry in the lower courts order don't even mention those cases if you're gonna take up equitable tolling you've got to address those two cases that kind of stand for this proposition didn't even mention those and so you can contend we should certify not only on the bail piercing as to nonprofits but also as to the equity as to the statute of limitations that's that's correct and I think the concern let me address that equitable tolling question I think the concern you raised is kind of the looming question Gentry and Matthews were both alter-ego cases but they applied a broad equitable tolling a question but to your point is it a still a good theory in the sham to perpetrate a fraud in an under capitalization case we submit that the case law out there absolutely yes the only thing that we saw the district court rely on was this weird opinion from San Antonio that purports to not apply equitable tolling don't even touch Gentry or Matthews and so what you've got are two Supreme Court of Texas opinions and nothing neither case addressing those are you talking about Matlock is the case you described as weird is that Matlock right but all the facts are pretty similar well what I think occurs there and if you read the case is she doesn't she's trying to figure out who the right entity is and she pleads discovery rule and fraudulent concealment I don't think she ever tees up the correct equitable tolling theory and as support for that look at the case it doesn't mention Gentry or Matthews once I'd submit if it was taken up the issue it would have noted those cases but you know to the bigger point is that look these are big questions as to whether or not under capitalization is sufficient with consistency degree and intent and judge Jolly said look I push back on that notion we we believe that under Lucas and Castleberry it is but look the actual application their skin the nonprofit issue we heard we're gonna hear from a police we heard from the both statutory case on secondary sources saying well that's not correct and the third issue is this the interplay of kind of Castleberry and 21.223 remember Castleberry was 86 the teabag statute was 89 there are these looming questions in tort cases which secondary authorities have said this is an elusive case that ordinarily you get contractual or quasi contractual claimants that absolutely fall within 21.223 we're not that case the questions for a jury are equity injustice and constructive fraud I mean what is the issue what is the disputed issue of fact that a jury will decide in this case they would decide whether the sweeping of funds for whatever reason the defendants claim whether the sweeping of funds was constructively fraudulent and resulted in an unjust legal question is it not what's that legal question is it not the factual question as it would be submitted would be 108.4 B of the Texas Pattern Jury Charge does the use of the corporate form result in injustice in this case that would be a question for the juror okay anything else thank you counsel ms. Altman you have 12 minutes may it please the court my name is Jacqueline Altman and along with mr. Greg Ave we represent the appellees who are members of the board of directors of the nonprofit corporation the Kossi Roping Club and in this case the district court granted summary judgment on three separate and independent bases I will discuss the first two bases which involve why miss Ledford's claims are all barred by the applicable statute of limitations as well as the lack of authority under Texas law to pierce the corporate veil of a nonprofit and mr. Ave will discuss the legal insufficiency of the veil piercing claims in order to prevail on the statute of limitations quite vigorously by counsel opposite that there is maybe maybe a bright line rule but a rule that says if I sue the corporation and I have a veil piercing theory that stops the clock so what the cases her gentry and Matthews correct entry no your honor first gentry was pre Castleberry pre Texas business and organizations code pre this entire modern construct of veil piercing second as your honors pointed out it's an alter-ego case as the court noted in the finding of an alter-ego we treat these two entities as identical they are interchangeable because of that by suing the initial entity timely you are essentially for all intents and purposes suing the alter-ego as well because there's no difference and what gentry actually stated was that in those circumstances when we look at the facts a plaintiff may be entitled to equitable tolling we agree a plaintiff may be Miss Ledford has not demonstrated her entitlement to equitable tolling at all and equitable tolling is the only method of tolling that she has pled or argued before this court if we look at how the actual timeline occurred in this case all of it is undisputed that all of Miss Ledford's claims stem from an accident in June of 2017 she knew of her injuries on that date in June 2017 Texas has a two-year statute of limitations for personal injuries so her the statute of limitations ran on all claims based on that incident in June of 2019 she did not sue the directors until October of 2019 four months after the statute of was not able to do that and show her entitlement to equitable tolling and she hasn't done that she completely ignores the fact that she essentially sat on this information decided not to investigate not to prosecute her case as is required and then months later decides to add the defendants with absolutely no reason for the delay and so mr. Talbert said that in August of 2019 was the first time that they learned that the corporation was consistently undercapitalized and first although mr. Abe will discuss the legal insufficiency issue there is no case that draws a distinction between just undercapitalization as your honor said which is insufficient and consistent undercapitalization I have not seen a case site for that in their brief nor did I hear mr. Talbert say that today and so I don't actually understand what that distinction is so is that not a reason to certify um no your honor because undercapitalization in general is not sufficient undercapitalization plus a lack of insurance is not sufficient because we know that undercapitalization alone cannot be enough I'm sorry what's remind me the best case for undercapitalization plus lack of insurance yes your honor I believe it is Ramirez and I can get you another one as well that's in our briefing and so even if we consider the fact that they are claiming August 2019 is the first time that they learned of this consistent undercapitalization if that is a distinction what they're omitting is that they never asked until July 2019 they didn't serve discovery requests on the nonprofit organization until after limitations I'm sorry to keep moving you between the two issues I but I'm still fascinated by the legal question on the pier the veil piercing theory what do you make of your friends argument that the nonprofit should have gotten insurance and failed to I think there's a distinction between what somebody should do what best practices are and what the law allows you to pierce the corporate veil for failing to do and the law does not allow you to pierce the corporate veil of a nonprofit just because they didn't have insurance and were undercapitalized and I also want to point out that originally the appellant had argued with regards to the lack of insurance and has dropped that on appeal and is solely arguing undercapitalization however regardless the cases show that lack of insurance plus undercapitalization is still legally insufficient to maintain a bail piercing claim what was the reason that they gave honestly just an oversight and the fact that they said they felt someone else had insurance I I believe that they believed that Johnny Hoyle who was the producer of the rodeo who was also sued in this case they thought that it was his job to have insurance I think he thought it may have been someone else's job I don't think he's been deposed yet and so I think it was a you can see that if they had intentionally foregone insurance that that would be the additional evidence you would need to establish to pierce the corporate veil in addition to undercapitalization no your honor because I still there are still cases that state undercapitalization and a lack of insurance those two alone are still legally insufficient to pierce the corporate veil and I think if we look Mr. Talbert's characterized the actions of the directors as this intentional malicious bleeding the corporation swiping funds what happened was they in his deposition this is on the record at page 533 counsel asked he's a question some of the money goes back into hosting the next rodeo answer yes sir have you ever encountered a situation we have extra answer yes sir what happens to the extra funds if you have extra surplus and this is what Mr. Talbert claims is the intentional bleeding of the funds every year answer it goes to improvements upgrades we donate to local charities the volunteer fire department Cosby 4-H in the corporation for the purpose of not being able to compensate a plaintiff which also Mr. Settle actually said in his deposition he never imagined that this situation would occur you cannot have an intentional avoidance of a situation that you didn't even imagine was possible he said upon further reflection does he understand maybe someone could get injured yes but he said honestly we so this was the result of barrel racing and there is an alleyway where the barrel racers exit on the horse and miss Ledford was crossing the alleyway the very end of the alleyway where the barrel racer came out and in the trial court record I believe there are videos people yelling telling her get out of the way move and then she got hit by the horse I mean so with respect to the events that are going on inside the ring whatever it's called I assume there's a great possibility of injury there who has insurance to cover that I don't know the answer to that in this case I believe the directors of the Cosby roping club thought that Johnny Hoyle the producer of the rodeo was the one I was gonna say evidently it must be someone else yeah talking about we're talking about insurance with respect to something different than the events going on I take it maybe maybe that doesn't make sense yeah and so I think that's some of the question is whose responsibility was it to have insurance so is the lack of insurance even something that we would consider in piercing the corporate mail because would it even be their responsibility to immaterial since that wouldn't be we're certainly interested in whether there is a Texas case directly on point that says under capitalization plus lack of insurance is not sufficient to to pierce the corporate bill and we'll look into that. You cited a case called the Ramirez and I'm sure it's cited in the brief. Yes your honor and let me there's also Shaw v. Maddox which is 73 Southwest 3rd 472 and then Durham v. Accardi this is 587 Southwest 3rd at 186 this states that under capitalization plus lack of insurance is still legally insufficient to maintain a bail piercing claim and in this case to go back to the statute of limitations issue we're not arguing a bright line rule in opposition where I think we are on the same page that when statute of limitations expires a party is entitled to prove that they are entitled to equitable tolling you don't automatically get it and Miss Ledford bears the burden to prove her entitlement and she has not she was not diligent in fact we have evidence that she began investigating the circumstances of the various parties involved she sent letters to the Kossi Roping Club she received an affidavit of no assets and no insurance in April of 2018 she did nothing until December of 2018 where she chose to only sue the Kossi Roping Club she then did nothing through the next six months June of 28 2019 limitations expired July of 2019 she served her first discovery request I understand that I mean what I understand the other side of the making and they can come back to me on rebuttal with this is that we have the Gentry and the Matthews cases from the Texas Supreme Court with respect to statute of limitations and bail piercing they're both alter ego cases the first one was just a straight-up you sued a company and we're gonna we're gonna allow the suit to go against the alter ego the second one had to do with that I believe a case against a company that went to judgment and then a company was formed to siphon off the assets or something like that okay I get that the question is how do they apply in this situation no that's that's fine I'm not even sure that was a question so thank you counsel thank you your honor mr. is it mr. Ave you have eight minutes thank you honors may it please the court my name is Greg Ave I represent Wesley subtle one of the four directors along with Miss Altman's clients Joe subtle Katrina subtle and the other the sister Donna keen as mentioned I'm going to try to focus on the factual basis surrounding the under capitalization issue so leaving aside whether these claims are time-barred can they get home ie to a fact issue here counsel do you agree that Ramirez is a good case for the idea that under capitalization plus lack of liability insurance is sufficient to pierce the court is insufficient sorry I believe there are probably at least there are probably four cases that touch on these issues number one would be the Wassler case out of the Western District bankruptcy court cited in the Apple he's brief Shaw which is out of the Houston Court of Appeals again cited in Apple he's brief then the to Dallas Court of Appeals decisions being Ramirez and I believe Shaw actually is a Dallas Court of Appeals and Durham which is accused in Court of Appeals all stand for that proposition I'm having a really hard time with the Ramirez thing so I appreciate that you are joining with your co-counsel on Ramirez but I'm sitting here looking at it and the court literally says there's evidence in the record that prior to this lawsuit comp Hornet I gather the corporation had assets greater than $250,000 yearly sales grossing more than a million dollars and liability insurance so I it's a case where the where the corporation had liability insurance I don't understand how that can help you in any way is your honor I believe Ramirez is applicable as to the broader issue with respect to the fact that to just judge Charlie's question whether or not capitalization standing alone is sufficient to justify piercing the corporate bail under Texas law but you understand my question which is not that which is we're trying to talk we all let's just assume we all agree under capitalization standing alone because there's a bunch of cases that say that your friend on the other side has said that's not his theory he's pointing to other things in the record so now we're talking about under capitalization plus X I understood your friend to say X is this idea that just the lack of liability insurance isn't sufficient so now we're trying to find cases on X and the first case you've offered me says literally the opposite I don't want to represent that Ramirez specifically addresses the issue of whether or not the existence of liability insurance puts the corporate stakeholders if you will over the top and not having sufficient factual basis I should know the decision better your honor because actually that was my case so I think of it as Harari because that was my client but I see the court's point I believe Wassler is probably a little bit more on point in that respect but I would also say that I don't believe Castleberry suggests that a lack of insurance is somehow an independent basis that you add to undercapitalization to somehow get and the last thing I would mention on that point is I don't believe I believe the focus both in the court in the district court and in this court the focus is on we've got evidence of undercapitalization that's all we need to get home and that's simply to Judge Jolly's point is simply not the case and we think those cases stand for that undercapitalization were ever to be allowed by a Texas court as a sole basis to pierce the corporate veil we submit it would never be applicable to a nonprofit organization this doesn't have to do with the statutory immunization that exists that was talked about earlier this has to do with the very purpose of a nonprofit corporation what is that purpose according to the summary judgment evidence submitted by Miss Ledford at page 412 of the appellate record stated in their certificate of corporation incorporation or certificate of formation excuse me it was to quote provide a local community environment for amateurs and children to participate on a local level to compete in rodeo events to have a local rodeo night here in our hometown it is our mission to be a qualified amateur sports organization created to promote community welfare for charity educational and recreational purposes close quote that's what the stated purpose and intent of this nonprofit corporation was and to judge Odom's suggestion earlier Kasi is not a town of census census Joe Settle testified in his deposition again part of the summary judgment evidence submitted by Miss Ledford quote it's a small-town community and people just help out where needed close quote so let's look at the record here is there any evidence in the record about how much insurance would it address issues such as there is not your honor again that question was not because you know a policy that would cover such a yeah that is quite expensive that and also makes it quite akin to undercapitalization right and I believe that I mean they said why didn't you have liability insurance well we couldn't afford it and I mean is that evidence of fraud that you can't it has to be some arduous intent some malevolent at least a touch of malevolence in it seems to me to constitute fraud absolutely your honor and to your point again mr. Settle testified in his deposition that he believed that the rodeo producer had insurance and provided insurance for the event that was his testimony that was his belief and I agree this goes to the discussion about Ramirez and your question just now judge Jalik that any injury ever is this the only injury that has ever occurred I believe that is a no existed decades upon decades your honor decades upon decades over over over 20 years I believe closer to into the perhaps the 80s it would be difficult to say that it was irresponsible not to have liability insurance absolutely and to your point your honor I believe a liability insurance is simply another asset that a corporation has it is not some special one and if the legislature wanted to compel a non-profit to have insurance it certainly is entitled to do so but it certainly did not in this case and I think that's a fair point the thing I'm so flummoxed by is that if the court says to you could you have a case where the lack under capitalization plus the lack of insurance is insufficient and you offer four cases the thing I'm not asking for a reasonable arguments but the cases you've given us one is a Western District bankruptcy Western District of Texas bankruptcy case obviously not a state case at all Shaw doesn't involve liability insurance at all it's an oral contract for a life insurance policy so like I'm and we've already been through Ramirez so I mean I think it's fair to say no we don't have a case what I'm struggling with is yes we have these cases they all say the opposite of what we need to prevail. I agree with the court that the authorities we site focus on this inability of undercapitalization to be sufficient in and of itself and into my estimation the reason that is responsive to your question well factually not directly on point we are we readily acknowledge that is that the insurance is nothing more than capitalization as I don't believe just judge Charlie said but as his statement intimates is the idea of what is an insurance policy it is nothing more than an asset period end of statement to protect you from certain liabilities not all liabilities but some liabilities would it apply to this one we don't know all we know is that they didn't have it and they thought the producer of the rail the rodeo would have it thank you did you have any other questions thank you mr. Talbert you have five minutes for rebuttal thank you and may it please the court time permitting I'm gonna run through four points on rebuttal equitable tolling under capitalization what the record actually shows and in this nonprofit issue we heard from opposing counsel these efforts to get away from Gentry and Matthews I think we heard at one point well it predated Castleberry piercing avails existence since 1901 in Texas there's no predating it here's what those cases say Gentry says suing the entity quote stop the running in favor of the other one Matthew says quote was told as to the other instant that's the direct language from these cases you have two cases on point saying it stops it holds the running and it's a mechanic a bright line rule or not I pause I should not I should call it a mechanical rule it's not a bright line rule it matters is is whether we can intelligibly apply the facts in this case to those cases which are different I take your point that there's still good law certainly certainly on let's touch on number two this under capitalization notion and you know there's kind of been the battle of kind of authority that gets around the issue but doesn't actually get to the issue I hear that what we're putting forward to the court are a slew of cases that note that under capitalization is good Supreme Court of Texas Castleberry Supreme Court of Texas Lucas Wilson v Davis under capitalization was a factor the s-line bb2b Northern District case and the last one I'd know it was a daglish case and here's what the clear to say that under capitalization can be a factor in determining whether to pierce the door in a tort case I would go further than call it just a factor because remember what Castleberry tells us it says that it can be an independent vein mind you it said we have six veins and then it drops under capitalization and says that maybe there's a seventh one in a footnote but I would submit that based on Castleberry it can stand alone and so here construing Castleberry is what that daglish case says well generally inadequate capitalization as part of a fraudulent scheme will support piercing the veil and so I think that goes hand-in-hand with Castleberry that if you've got constructive fraud the injury is to the public the tendency is the constructive fraud sure and so the definition of constructive fraud was a tendency to deceive to violate confidence where is that where's the evidence of that it appears that they've had no accident in these decades that they've been running the incident I mean they have no money they give what little money they have to charity so where is the evidence of fall and that's a great segue to three and I want to answer that what does the record show and is there enough to raise a fact question out of constructive fraud here's what the evidence shows we heard well he just never foresaw this that's not true on 535 of the record it says was it is this a dangerous event yes was it foreseeable someone could get injured yes would it have been responsible to have gotten insurance yes yes yes but you swept the funds and were never in a position to compensate someone who was foreseeably injured at your event that's constructive fraud injurious to public interest remember they have shifted the risk to the innocent members of the public they said come to our dangerous event we formed a corporation if you get hurt too bad so sad is there at least a fact issue on that point absolutely there isn't I'm pretty sure they didn't advertise rodeo that way well no they didn't say come to our danger that would be a terrible marketing scheme even to what I think is important here also we're talking about a factual dispute they're arguing the benefit of factual inferences what this man maybe intended or did that is a question for a jury and so the fourth element I'll note is this notion that what the question for the jury I know I've said this and the question would be is the use of the corporate form does it result in jury charge 108.4 be that's I think the disputed evidence would be whether or not this did result in some form of constructive fraud that was injurious to the public interest well and I guess I would just lean on again Castleberry saying and except in exceptional circumstances this is a fact question for a jury the nonprofit status doesn't alter that the statute doesn't alter that and so I'll wrap up here with all that said I'd request the court to reverse the trial court's order granting some of judgment thank you counsel vigorously presented argument on both sides that concludes our oral arguments for today so we will stand in recess until tomorrow morning